This is 18-1033 and 18-1618. We will hear a separate argument on the two cases. Mr. Marangolo? Yes, Your Honor. I will start with the contempt case first, if that's okay, to do it chronologically. I'm going to have the argument separate on both of them. You were not the attorney on this case, but let's see if we can separate them sufficiently. Go ahead. Okay. The contempt case originally started with a civil case in IBC London, which is a Chinese bank against Blacksands. During that lawsuit, a summary judgment was granted to IBC London, and Mr. Brenneman was a Blacksands CEO. He was held in contempt by Judge Kaplan. The issue before the court really is whether the court abused its discretion issuing the contempt court order to a non-party. In OS Recovery, the circuit held in 2006 that it would be an abuse of discretion holding a non-party. With that said, Brenneman was subsequently indicted for contempt, and then he went to trial. The next issue before the court, which we believe the judge… Counsel, can I interrupt? Sure. I have one question. When did the federal government become a debt collector for this bank? I don't know. I believe on the fraud case. Okay. Go on. Okay. So in the contempt case, we believe the judge erred by allowing 404B evidence of the civil orders of contempt against Mr. Brenneman into the case. I respectfully submit that if you do the 403 balancing test, it was more prejudicial than probative to allow the civil contempt orders into the criminal case based on that evidence alone. You have to persuade us of that, that it was an abuse of his discretion to conclude otherwise, right? I would – That's the standard on the 404-403 balancing, isn't it?  Okay. So now he redacted it, and he concluded that it was probative of willfulness. So tell us why, though, that that was abusive of his discretion. I think when – if you look at the evidence before the jury, 12 people, I think when they're looking at evidence presented in a criminal trial, when you have an order which is similar to what the proof was in the criminal trial, not the proof meaning beyond a reasonable doubt, but that the allegations that he was already convicted of a contempt order or ordered that this particular evidence was prejudicial towards him. So if you're the jury and that evidence is being presented in a criminal case, I would think that it's very, very difficult for a juror to differentiate. And therefore, the judge – respectfully, the judge in this particular instance, I believe that he should have known and abused the discretion by permitting that evidence to go before the jury. And that's just my argument, Judge. I think that the abuse of discretion analysis by allowing it was very extremely prejudicial towards the defendant. Lastly, in the evidentiary issues that we briefed, I believe on the reply like the judge said that I came in late, is that there was no evidence. The judge didn't permit evidence of settlement agreement or settlement negotiations with the Chinese bank. And I think if the jury heard that there were settlement negotiations with the Chinese bank between – They did not hear it. It was precluded by the judge from that – from the coming into the case. He admitted exhibits FXDN because they showed what the defendant knew about settlement discussions, and the judge found that that was permissible for his good defense – good faith defense. It excluded evidence of settlement discussions either because they – you sought to introduce them in a form that the judge sustained objection to, or they were not documents of which the defendant was aware. Now, why wasn't that all sound – why weren't those all sound rulings by the judge? Well, they – what I believe is, Judge, if this circles back – and you're correct, Judge. I'm looking at my notes. You are correct. I believe it circles back that he was denied the opportunity by the court to present any witnesses from ICBC. That the court – the judge ruled that he was not – to the extent they were known by the defendant. To the extent you were – witnesses were asked questions, the objections that were sustained were to form. It wasn't that you were totally precluded from going into this. The other evidence were to – the other objections that were sustained pertained to documents that your client was unaware of. So what was it you weren't allowed to put in that was prejudicial? Well, I guess, Your Honor, that you're correct that it was objection to form, and the lawyer at the time, which was not me, should have – I misread. All right. So that's not going to be enough. That's not going to be enough. That is not – that we would draw that particular evidence and rely on the 404B, 403 analysis, as well as the non-party for the first issue regarding the first appeal. Would we – would I go in right now to the fraud appeal, or would we want the government – No, we'll hear from the government. Okay. Is that – is that your entire argument? That's my entire oral argument. We have – we will rely on the brief for the, I guess, the other arguments in there. Okay. Well, then we'll hear from the government on the first case, Judge Kaplan's case. Thank you, counsel. Thank you. May it please the court, my name is Danielle Sassoon, and I represent the United States on appeal, as I did only at the fraud trial below. I'd like to pick up on the issue of the civil contempt orders, which were admitted at the criminal contempt trial. And first, I would like to clarify that this is not, in fact, a rule 404B issue at all. It's a question of balancing 403 and 401, and I'll explain that now. This evidence of the civil contempt orders was not prior bad conduct or prior bad acts. Instead, it was part of the conduct for which the defendants were on trial. Specifically, it was part of the narrative of what led to the contempt and how the contempt persisted. And Judge Kaplan appropriately conducted the Rule 403 analysis and determined that this evidence was extremely probative. As the district court explained, the civil contempt orders were relevant to Brennerman's willfulness in ignoring the discovery orders after the contempt orders were issued. And with respect to prejudice, he minimized prejudice in two key ways, as Judge Raddy has pointed out. First of all, he redacted the order and removed some of the most prejudicial conduct, and the defense approved of those redactions. And second, he twice instructed the jury about the limited purpose for introducing the contempt order. And he accommodated suggested changes to that instruction from defense counsel, and that's in the transcript from pages 301 to 303. And there were a few important components of the limiting instruction that he provided twice. First, he made clear that civil and criminal contempt are distinct. And then he also explained that the evidence was being introduced for a limited purpose, specifically as part of the background of the case, and specifically to only be considered in assessing proof of the defendant's intent and his willfulness. So there was no abuse of discretion in this evidentiary decision, and in any event, although this was one piece of the proof of willfulness and intent, the other evidence of willfulness and intent was absolutely overwhelming. And as the government set forth in its closing, there were six independent ways of proofing willfulness, of which the contempt orders were only one. And I can go into those other ways that willfulness was proved if the court is interested. Hi, counsel. This is Judge Pooler. When did this civil case trying to collect a debt become a criminal action, and how did that happen? How does the government act as a debt collector for the ICBC? Your Honor, the government respectfully was not acting as a debt collector, but was referred this case for potential investigation for criminal contempt, determined that there was evidence of criminal contempt, and also in the course of that investigation uncovered a massive fraud, which was the basis for the other trial against the defendant. Right, but one flows from the other. In this particular case, yes, because in the course of investigating the criminal contempt, the government discovered evidence of far-reaching fraud that included ICBC, but that also extended to other victims of the defendant, including Morgan Stanley and other individual victims whose harm was part of the sentencing proceeding in the fraud trial. But all initiated on a referral of contempt by the district court? Is that your position? Correct. That's how the investigation began. And what was the basis of the referral, that Mr. Brenneman simply did not produce what was required of him during discovery, or he was, as we know, willful or contemptuous of the court? What turned this into a criminal referral? Yes, Your Honor, I think there were a number of things in the civil proceedings that were extremely suspicious and suspect. It's not just that the defendant did not comply with discovery orders, it's that he persisted in not complying despite the civil contempt orders, that he provided false information in his first responses that were provided in November. And there were a lot of signs that indicate that his company was perhaps a fraud or that the money had been used not for the purposes originally represented, which again leads into the fraud case. Okay. Does anyone have any other questions for Ms. Sassoon? No, thank you. If not, we'll turn to the other case. Oh, did you? I'm sorry. Did you have a question? Judge Nardini? No, thank you. Okay.